UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| GREAT AMERICAN INSURANCE COMPANY OF NEW YORK a/s/o SERENITY LAKE SENIOR, LLC and SERENITY LAKE SENIOR, LLC, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | CASE NO.: 2:14-cv-55 |
| SUPERIOR CONTRACTING CORPORATION d/b/a AMERICAN NATIONAL INSULATION, FIRE PROS, INC., C.D. BARNES ASSOCIATES, INC. and ECONOMIDES ARCHITECTS, LLC | ) ) ) ) ) ) ) | |
| Defendants. | ) | |

### ECONOMIDES ARCHITECTS' BRIEF IN SUPPORT OF MOTION TO DISMISS

Defendant Economides Architects, LLC ("Economides Architects"), respectfully submits this brief in support of its Rule 12(b)(6) Motion to Dismiss the Complaint filed against it by Plaintiffs Serenity Lake Senior, LLC ("Serenity Lake") and Great American Insurance Company of New York ("Great American").

### I.)    Introduction

Plaintiffs have filed a lawsuit for property damage allegedly caused when water pipes for a fire suppression system froze and burst on January 21, 2012, discharging water into a building at the Serenity Lake complex in Gary, Indiana. They have sued a multitude of defendants – the subcontractor who allegedly designed and installed the sprinkler system (Fire Pros), the subcontractor who allegedly designed and installed the insulation (ANI), the alleged general

contractor (Barnes), and the architect (Economides Architects). The Complaint against Economides Architects should be dismissed for failure to state a claim because Serenity Lake and Economides Architects expressly agreed in their written contract that Economides Architects was not responsible for the design of or drawings for the fire suppression system, and that Economides Architects was not responsible for the conduct (or alleged misconduct) of the contractor or the subcontractors. Specifically, the parties' written agreement expressly states the following:

> **[ECONOMIDES ARCHITECTS'] SERVICES DO NOT INCLUDE** the following ... Fire Suppression design and drawings if needed.
>
> * * *
>
> **CONSTRUCTION**: The Architect shall not have control over or charge of and shall not be responsible for construction means, techniques, sequences, or procedures, or for safety precautions and programs in connection with the Work, since these are solely the Contractor's responsibility. The Architect shall not be responsible for the Contractor's schedules or failure to carry out the Work in accordance with the Contract Documents. The Architect shall not have control over or charge of acts or omissions of the Contractor, Subcontractors, or their agents or employees, or of any other persons performing portions of the Work.

(Emphasis in original.) Indeed, as Plaintiffs' own complaint alleges, such services for the fire suppression system were to be provided by the contractor Barnes and the subcontractors ANI and Fire Pros. Accordingly, Plaintiffs have no claim against Economides Architects, and the Complaint against it should be dismissed in its entirety pursuant to Rule 12(b)(6).

## II.)   Legal Standard for Dismissal Under Rule 12(b)(6)

Economides Architects respectfully submits that the Complaint should be dismissed pursuant to Rule 12(b)(6). "A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint for failure to state a claim upon which relief may be granted." *GE Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074 (7th Cir. 1997).

Dismissal of a complaint is appropriate if "it appears to a certainty on the face of the complaint that the complaining party is not entitled to any relief." *Waste, Inc. Cost Recovery Group v. Allis Chalmers Corp.*, 51 F. Supp. 2d 936, 939 (N.D. Ind. 1999); *Gessert v. United States*, 703 F.3d 1028, 1033 (7th Cir. 2013). "[A]ll well-pleaded allegations are presumed to be true. Furthermore, a court must view those allegations in the light most favorable to the plaintiff, and accept as true all reasonable inferences to be drawn from those allegations." *Waste, Inc.*, 51 F. Supp. 2d at 939 (internal citations omitted); *Richmond v. Nationwide Cassel L.P.*, 52 F.3d 640, 644 (7th Cir. 1995).

However, "although the complaint's factual allegations are accepted as true at the pleading stage, allegations in the form of legal conclusions are insufficient to survive a Rule 12(b)(6) motion. Accordingly, '[t]hreadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice.'" *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 885 (7th Cir. 2012) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 679 (2007)).

Moreover, "it is a well-settled rule that when a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations." *Home Repair, Inc. v. Universal Restoration Servs.*, 90 Fed. Appx. 142, 145 (7th Cir. 2003) (quoting *Northern Ind. Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F. 3d 449, 454 (7th Cir. 1998)).

In evaluating a motion to dismiss under FRCP 12(b)(6), the court considers "the complaint itself, documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice." *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012). While it is the general rule under Rule 12(d) that when "matters outside the pleadings are presented to and not excluded by

3

the court, the [Rule 12(b)(6)] motion must be treated as one for summary judgment under Rule 56," there is a well-recognized exception to that rule. Specifically, it is "well-settled in [the 7th Circuit] that `documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim. Such documents may be considered by a district court in ruling on the motion to dismiss.' . . . While [this is a] narrow [exception], this exception is `aimed at cases interpreting, for example, a contract.'" *188 LLC v. Trinity Industries, Inc.*, 300 F.3d 730, 735 (7th Cir. 2002). And, "[t]he purpose of the exception is to prevent parties from surviving a motion to dismiss by artful pleading or by <u>failing to attach relevant documents</u>." *Id.* (emphasis added).

### III.) Complaint Allegations and the Economides Architects Contract

Plaintiffs have alleged the following in their Complaint[1] (attached hereto as Exhibit A) and/or such appears in the Owner-Architect Agreement with Economides Architects that is otherwise a part of the pleadings (attached hereto as Exhibit B to the Economides Affidavit):

1.) Serenity Lake operates a large Senior Citizen Independent Living Complex at a facility located in Gary, Indiana – the "Serenity Premises." (Complaint ¶2.) Great American Insurance provided property insurance for property damage occurring at that facility and, when it paid insurance proceeds for the property damage described in the Complaint, it became subrogated to Serenity Lake's rights for recovery of such damages. (Complaint ¶¶'s 1, 24, and 25.)

2.) A wet sprinkler system for fire suppression had been installed in the facility during construction of the facility. (Complaint ¶14.)

---

[1] The Complaint was filed on January 21, 2014, in Lake County Superior Court, but removed on Diversity of Citizenship grounds to this Court on February 20, 2014.

4

3.) On January 21, 2012, the fire suppression system's water pipes froze and burst, discharging large amounts of water into the interior of a building at the Serenity Lake facility – allegedly because the fire suppression system's pipes were not properly insulated against the cold temperature. (Complaint at ¶¶'s 22 and 23.)

4.) Plaintiffs allege that Economides Architects was the architect for the Serenity Lake facility. (Complaint ¶16.) Although Plaintiffs artfully fail to attach it to the Complaint, there was a written contract that established and defined this relationship referenced by Plaintiffs, making it critical to the complaint. (Economides Affidavit at Exhibit 1.)

5.) The written contract with Economides Architects was signed by the owner of the Serenity Lake project on November 22, 2005, and pursuant to that contract, Economides Architects indeed had agreed to provide certain architectural services for the design of the facility. (Economides Affidavit at Exhibit 1, *passim*.)

6.) However, the parties to the Owner-Architect Agreement had expressly agreed to exclude certain services from the Economides Architects' scope of work, as follows:

> **SERVICES DO NOT INCLUDE** the following; therefor, if required, shall be billed to the Owner:
>
> * * *
>
> *   Fire Suppression design and drawings if needed.

(Economides Affidavit at Exhibit 1, at page 3.)

7.) Indeed, the Owner-Architect Agreement does not state anywhere that Economides Architects was responsible for the design of a fire suppression system, or of insulation for the pipes or plumbing of such a system. (Economides Affidavit at Exhibit 1, *passim*.)

8.) The parties' written agreement further states the following exclusion or disclaimer:

5

>**CONSTRUCTION**: The Architect shall not have control over or charge of and shall not be responsible for construction means, techniques, sequences, or procedures, or for safety precautions and programs in connection with the Work, since these are solely the Contractor's responsibility. The Architect shall not be responsible for the Contractor's schedules or failure to carry out the Work in accordance with the Contract Documents. The Architect shall not have control over or charge of acts or omissions of the Contractor, Subcontractors, or their agents or employees, or of any other persons performing portions of the Work.

(Economides Affidavit at Exhibit 1, at pages 4-5.)

9.) The exclusion of design services relating to the fire suppression system was reiterated in the design drawings provided by Economides Architects in furtherance of the Owner-Architect Agreement, as follows:

> 16. A LICENSED FIRE PROTECTION CONTRACTOR IS RESPONSIBLE FOR ENGINEERING A COMPLETE, CODE-COMPLIANT SYSTEM, DRAWINGS AND SHOP DRAWINGS AND SUBMITTING THEM FOR APPROVAL AND PERMITS.

(Economides Affidavit, at Exhibit 2.)

10.) Plaintiffs specifically allege in their Complaint that Serenity Lake and/or its contractor Barnes contracted with two entities for such "design and build" services for the fire suppression system – ANI and Fire Pros:

> 13. BARNES hired ANI and FIRE PROS to serve as insulation and sprinkler design build subcontractors for the construction of the SERENITY PREMISES.
>
> 14. FIRE PROS installed a wet sprinkler system in the third floor (top floor) ceiling of the SERENITY PREMISES.
>
> 15. ANI installed insulation in the attic of the SERENITY PREMISES and third floor ceiling under and over portions of the wet sprinkler system piping in such a manner that it prevented heat from the third floor ceiling from properly warming the pipes, while installing insufficient insulation.
>
> \* \* \*
>
> 17. After completion of their insulation work, FIRE PROS failed to confirm that the correct amount of insulation level existed above the sprinkler pipes.

6

> 18. FIRE PROS contracted with SERENITY to perform maintenance and inspection services on the sprinkler system at the SERENITY PREMISES.
>
> 19. Between the time of the construction and January 21, 2012, FIRE PROS performed inspections of the sprinkler system but failed to discover the improperly insulated pipe in the sprinkler system as required by the National Fire Protection Association and otherwise [referring to certain provisions previously alleged in the Complaint to exist in the Indiana Building Code].
>
> 20. FIRE PROS approved the sprinkler system and its installation and activated it and certified that it was ready for service.
>
> 21. During the time of the construction and January 21, 2012, BARNES performed inspections of the SERENITY PREMISES including the attic, insulation, and fire protection systems, but failed to discover the improperly insulated pipe in the sprinkler systems required by the National Fire Protection Association and otherwise.

(Complaint at ¶¶'s 13-15 and 17-21.)

11.) Despite the clear terms of their written agreement, and despite these allegations in their own Complaint against the other defendants, Plaintiffs have nonetheless alleged in the Complaint that Economides Architects somehow was "responsible for designing and specifying the sprinkler system's insulation system to avoid freezing and bursting of the same." (Complaint at ¶16.) In their sole Count against Economides Architects, they allege that Economides Architects was negligent, and that such negligence caused the fire suppression pipe to freeze and burst, as follows:

> 54. At all relevant times, Economides owed Serenity a duty to perform architectural services in a manner to protect Serenity's sprinkler system from reasonably foreseeable damage.
>
> 55. Economides breached its duty through one or more of the following acts or omissions:

7

    a.   Carelessly and negligently failing to design the insulation system plans and specifications for the sprinkler pipes;

    b.   Carelessly and negligently failing to clearly communicate in its designs and specifications the installation of insulation for the sprinkler pipes;

    c.   Carelessly and negligently failing to notify others that the insulation for the sprinkler pipes was improperly performed;

    d.   Carelessly and negligently violated applicable sprinkler, fire, plumbing, building [sic];

    e.   Failed to require coordination between its design and the sprinkler contractors design; and/or

    f.   Otherwise acted negligently.

    56.   As a direct and proximate result of one or more of the foregoing negligent acts or omissions by Economides, a pipe in the fire protection system at the Serenity Premises burst and Serenity suffered damages.

(Complaint at Count VII, and ¶¶'s 54-56.)

### IV.)   <u>Legal Argument</u>

Indiana law recognizes that an architect only has a duty to "perform with reasonable care the duties <u>for which it contracted</u> … and is liable for failing to exercise professional skill and reasonable care in preparing plans and specifications <u>according to its contract</u>." *Greenhaven Corp. v. Hutchcraft & Associates, Inc.*, 463 N.E.2d 283, 286 (Ind.App. 1984) (emphasis added). Similarly, it has been held that "[a]n architect does not owe a fiduciary duty to its employer; rather, the architect's duties to its employer depend upon the agreement it has entered into with that employer." *Strauss Veal Feeds, Inc. v. Mead & Hunt, Inc.*, 538 N.E.2d 299, 303 (Ind.App. 1989) (holding that it was erroneous for the trial court to impose a duty on the architect to advise its employer that a state environmental agency might disapprove of the employer's operations that were the subject of the design work, because advising the employer of such risks was beyond the scope of the parties' architectural services contract).

Indeed, while Indiana courts find instructive the principle that there is "implied in every contract between an architect and his employer an agreement that plans and specifications prepared by the architect will be suitable for the purposes for which they are prepared," and that this "includes the architect's duty to draw plans and specifications that conform to building codes, zoning codes, and other local ordinances," *Id.* at 285 (citations omitted), Indiana law is clear that the scope of the architect's duties may be modified by agreement, and that such an agreement defines the scope of the architect's duties to its employer. *Id.* ("[A]n architect's duties to his <u>employer depend upon the agreement he has entered into</u> with that employer.") (emphasis added).

Moreover, an architect is not a guarantor or an insurer of the work. "Absent a special agreement, an architect does not imply or guarantee a perfect plan. . . . [And] in the absence of such an agreement, we do not believe any alleged failure to notice construction deficiencies or incompletions required the trial court to find, as a matter of law, that [the architect] breached the contract with respect to its inspection obligations.  To hold otherwise would essentially transform [the architect] into an insurer of [the contractor's] work, which the contract between [the employer] and [the architect] prohibits." *Farah, LLC v. Architura Corp.*, 952 N.E.2d 328 (Ind.App. 2011) (enforcing language in the contract that disclaimed any responsibility of the architect to be responsible for the contractor's failure to perform the work in accordance with the contract documents, and disclaimed any control over or responsibility for the acts or omissions of the contractor(s) performing the work).  And, an "architect is not a warrantor of his plans or specifications.  The result may show a mistake or defect, although he may have exercised the reasonable skill required." *Mayberry Café, Inc. v. Glenmark Constr. Co.*, 879 N.E.2d 1162,

1173 (Ind.App. 2008) (enforcing the terms of the architect services agreement that excluded responsibility for the alleged deficiencies).

Despite the clear language of the parties' Owner-Architect Agreement entirely excluding the design and drawing of a fire suppression system from the scope of Economides Architects' responsibilities, the Plaintiffs nonetheless allege that Economides Architects is somehow responsible for such and that it negligently failed to discharge those responsibilities. These arguments fail as a matter of law and Economides Architects' Motion to Dismiss pursuant to Rule 12(b)(6) should be granted.

> **A.)** **Economides Architects had no duty to design any aspect of the fire suppression system, including insulation for its sprinkler pipes.**

In sub-paragraphs (a), (b), and (d) of paragraph 55 of its Complaint, Plaintiffs allege that Economides Architects acted negligently in the following ways:

> a. Carelessly and negligently failing to design the insulation system plans and specifications for the sprinkler pipes;
>
> b. Carelessly and negligently failing to clearly communicate in its designs and specifications the installation of insulation for the sprinkler pipes;
>
> \* \* \*
>
> d. Carelessly and negligently violated applicable sprinkler, fire, plumbing, building [sic][.]

Each of these allegations, though, is premised on the assertion that Economides Architects had some sort of duty to design the fire suppression system in the first place. However, the Owner-Architect Agreement makes it unambiguously clear and explicit that Economides Architects had no such duty. Specifically, the parties expressly agreed that such services were entirely excluded from Economides Architects' responsibilities:

> **"SERVICES DO NOT INCLUDE** the following; therefor, if required, shall be billed to the Owner:
>
> * * *
>
> \*   Fire Suppression design and drawings if needed."

(Economides Affidavit at Exhibit 1, at page 3.)  To now assert that Economides Architects had some sort of duty to design some sub-element of such a system – the insulation for the sprinkler pipes – and communicate such in designs and specifications and/or to ensure that it was code compliant is a complete distortion and disregard of this exclusion in the parties' contract.  These assertions cannot stand in light of Indiana's long-standing law to the contrary.  *Mayberry Café*, 879 N.E.2d at 1173; *Strauss Veal Feeds,* 538 N.E.2d at 303; *Greenhaven*, 463 N.E.2d at 286.

Accordingly, this Court should enforce the valid, clear, and unambiguous provisions of the Owner-Architect Agreement, and dismiss the allegations against Economides Architects of negligence premised on sub-paragraphs (a), (b), and (d) of paragraph 55 of the Complaint.

### B.) Economides Architects had no duty to control or coordinate the work of Barnes, FirePro, and/or ANI

In sub-paragraphs (c) and (e) of paragraph 55 of its Complaint, Plaintiffs allege that Economides Architects acted negligently in the following ways:

> c.   Carelessly and negligently failing to notify others that the insulation for the sprinkler pipes was improperly performed;
>
> * * *
>
> e.   Failed to require coordination between its design and the sprinkler contractors design[.]

Each of these allegations too is premised on the assertion that Economides Architects had some sort of duty to control or coordinate the conduct of the contractor Barnes, the fire suppression sub-contractor Fire Pros, and/or the insulation sub-contractor ANI.  Again, though,

11

the Owner-Architect Agreement makes it unambiguously clear and explicit that Economides Architects had no such duty.  Here, the parties expressly agreed that Economides Architects had no such responsibilities:

> **CONSTRUCTION**:  The Architect shall not have control over or charge of and shall not be responsible for construction means, techniques, sequences, or procedures, or for safety precautions and programs in connection with the Work, since these are solely the Contractor's responsibility.  The Architect shall not be responsible for the Contractor's schedules or failure to carry out the Work in accordance with the Contract Documents.  The Architect shall not have control over or charge of acts or omissions of the Contractor, Subcontractors, or their agents or employees, or of any other persons performing portions of the Work.

(Economides Affidavit at Exhibit 1, at page 3.)

These disclaimers of responsibility were further made clear in the designs and drawings the Economides Architects did prepare, as follows:

> 16.   A LICENSED FIRE PROTECTION CONTRACTOR IS RESPONSIBLE FOR ENGINEERING A COMPLETE, CODE-COMPLIANT SYSTEM, DRAWINGS AND SHOP DRAWINGS AND SUBMITTING THEM FOR APPROVAL AND PERMITS.

(Economides Affidavit at Exhibit 2.)

Plaintiffs' assertions to the contrary cannot stand in the face of these valid, clear, and expressly agreed upon disclaimer provisions, and cannot stand in the face of long-established Indiana law to the contrary.  *Farah*, 952 N.E.2d 328; *Mayberry Café,* 879 N.E.2d at 1173.

Accordingly, this Court should enforce the parties' Owner-Architect Agreement, and dismiss the allegations against Economides Architects of negligence premised on sub-paragraphs (c) and (e) of paragraph 55 of the Complaint.

## C.) Plaintiffs' bald allegation of general negligence is conclusory and cannot defeat this dismissal motion.

Finally, in sub-paragraph (f) of paragraph 55 of its Complaint, Plaintiffs throw out the bald and general allegation that Economides Architects somehow "[o]therwise acted negligently." This assertion too fails as matter of law in light of the parties' clear and unambiguous contract terms, as explained above. *Home Repair,* 90 Fed. Appx. at 145 (quoting *Northern Ind. Gun & Outdoor Shows*, 163 F. 3d at 454) ("it is a well-settled rule that when a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations."). And, this bald, general, and conclusory allegation is insufficient to defeat a Rule 12(b)(6) motion, as the courts in this circuit have long held. *McReynolds*, 694 F.3d at 885 (quoting *Twombly*, 550 U.S. at 679) ("[t]hreadbare recitals of the elements of the cause of action supported by mere conclusory statements, do not suffice'").

Accordingly, this Court should dismiss the negligence allegations against Economides Architects premised on sub-paragraph (f) of paragraph 55 of the Complaint.

## V.) Conclusion

Plaintiffs' allegations of negligence against Economides Architects cannot stand. Each allegation is premised on the existence of an asserted duty that completely disregards or contradicts the parties' clear and unambiguous written agreement. The parties' Agreement should be enforced, and the Complaint against Economides Architects should be dismissed pursuant to Rule 12(b)(6) for failure to state a claim, and for all other appropriate relief.

Respectfully submitted,

 /s/ James M. Hinshaw
James M. Hinshaw, Atty. #16744-49
BINGHAM GREENEBAUM DOLL LLP
2700 Market Tower
10 W. Market Street
Indianapolis, IN  46204-4900
(317) 635-8900
(317) 236-9907 (fax)
jhinshaw@bgdlegal.com

 Attorney for Defendant,
Economides Architects, LLC

### CERTIFICATE OF SERVICE

I hereby certify that on March 20, 2014, a copy of the foregoing was filed electronically. Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

Ricardo A. Hall
Spangler, Jennings & Dougherty, P.C.
rhall@sjdlaw.com
*Attorney for Great American Insurance Company of New York*

Court L. Farrell
clf@bpc-law.com
Bruce P. Clark
Bruce P. Clark & Associates
bpclaw@bpc-law.com
*Attorneys for Defendant Fire Pros Inc.*

James M. Portelli
Moore & Portelli
jportelli@mooreandportelli.com
*Attorney for C D Barnes Associates Inc.*

Thomas J. Finn
Leahy Eisenberg & Fraenkel Ltd
tjf@lefltd.com
*Attorney for Defendant Fire Pros Inc.*

Patrick M. Miller
Faegre Baker Daniels LLP
patrick.miller@faegrebd.com
*Attorney for Superior Contracting Corporation d/b/a ANI*

I hereby certify that I have served a copy of the above and foregoing via certified mail, return receipt requested, to the following counsel of record on this 20th day of March, 2014.

Margaret A. Lynch
Masco Corporation
21001 Van Born Road
Taylor, MI  48180
*Attorney for Superior Contracting Corporation d/b/a ANI*

/s/ James M. Hinshaw

*15194589*

14